IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINO'S PIZZA LLC, successor in interest to Domino's Pizza, Inc., ) ) | |
| Plaintiff, ) | CIVIL ACTION NO. 3:05-456 |
| ) | |
| v. ) | |
| ) | JUDGE KIM R. GIBSON |
| ROBERT J. DEAK, ) | |
| Defendant. ) | |

### MEMORANDUM OPINION & ORDER

**Gibson, J.,**

Now before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to FED. R. CIV. P. 12(b)(6) (Document No. 6), as well as the supporting and opposing briefs. Plaintiff Domino's Pizza LLC ("Domino's" or "Plaintiff") filed this contract action on December 19, 2005, requesting a declaratory judgment that its franchise agreements with Defendant have expired and no longer bind the Parties. Document No. 1, ¶¶ 23-30. Defendant Robert Deak ("Deak," "Defendant," or "Counterclaimant") Answered on March 3, 2006, stating several defenses and contending that renewal of the relevant agreements was left solely to his discretion. Document No. 5, ¶¶ 31-52. Defendant also stated a counterclaim seeking a declaration that Plaintiff is estopped from refusing Deak's request to renew the relevant agreements. *Id.* at ¶¶ 47-52. Plaintiff timely responded with the motion *sub judice* on March 23, 2006. The Court's jurisdiction over this Declaratory Judgment Acts action is based on 28 U.S.C. § 1332; venue is proper under 28 U.S.C. § 1391.

1

## I. BACKGROUND[1] AND PROCEDURAL POSTURE

Domino's Pizza, Inc. was a corporation engaged primarily in the business of operating Domino's Pizza stores and granting franchises for the same. As of January 3, 2000, all rights, liabilities and property of Domino's Pizza Inc. were assigned to Plaintiff, a Michigan-based limited liability company. Document No. 1, ¶ 7. Domino's Pizza Stores specialize in the sale of pizza prepared according to a unique method; feature carry-out and delivery services; operate with a uniform business format and specially-designed equipment; and practice similar methods and procedures.

In 1980, Defendant, a former Domino's employee, was granted exclusive rights to develop a certain geographical area under the terms and conditions set out in an Area Agreement dated July 28, 1980 ("the Pennsylvania Agreement"). This area generally included Centre, Blair, Clinton, and Lycoming Counties in Pennsylvania. Under a provision headed "Term of Agreement," the Pennsylvania Agreement read as follows:

> [T]he initial term of this Agreement shall be from the date hereof until the last day of the first Agreement Year and thereafter, this Agreement shall be automatically renewed for successive terms of one Agreement Year until the last day of the tenth (10th) Agreement Year, unless [Defendant] shall, at its sole option, elect not to renew and shall give written notice to Domino's of such election at least one hundred twenty (120) days prior to the end of any Agreement Year.

Document No. 1, p. 14. The Pennsylvania Agreement also contained an integration clause, according to which, "[t]he preamble recitals and Exhibits hereto are a part of the Agreement, which constitutes the entire agreement of the parties and there are no other oral or written understandings or agreements

---

[1] Except where otherwise indicated, the facts are taken from Defendant's Answer and Counterclaim and any consistencies between the Parties' pleadings. The Court has disregarded all conclusions of law and, though no marks are used, directly quoted the Parties where appropriate.

between Domino's and [Defendant] relating to the subject matter of this Agreement except as otherwise contemplated by this Agreement." *Id.* at 23.

In May 1990, the Parties executed an addendum to the Pennsylvania Agreement, which provided that the term of the original contract "shall be extended for an additional ten (10) year period following the expiration date of the Area Agreement. . . . [T]he parties agree that the expiration date of the Area Agreement as executed by this Addendum shall be July 31, 2000." *Id.* at 41. In February 2001, the parties entered into a second addendum, which extended the term another five years: "[T]he parties agree that this additional five (5) year term commenced August 1, 2000 and expires July 31, 2005." *Id.* at 47.

In addition to the Pennsylvania Agreement, Defendant also held franchise rights covering the area of Penobscot, Waldo, Kennebec, and Androscoggin Counties, Maine, pursuant to an agreement dated December 10, 1984 ("the Maine Agreement"). The ten-year term of the agreement commenced on the date of execution, and the contract featured an integration clause identical to that of the Pennsylvania Agreement. Document No. 1-2, pp. 1 & 10. In an addendum dated May 23, 1990, the Parties extended the term of the Maine Agreement by an additional ten-year period, stipulating that "the expiration date of the [Maine] Agreement as executed by this Addendum shall be December 9, 2004." *Id.* at 18.

In August 2005, Domino's, believing that Deak was not opening new stores in the relevant territories and receiving interest from other franchise applicants, informed Defendant that it would not renew his Area Agreements in substantially the same form and would be accepting franchise applications from third parties. *Id.* at 24. In September 2005, Plaintiff received a response from

3

Defendant's attorney, stating that "[s]pecific representations were made to my client that his Area Agreements would not be limited as to time. . . . The course of action described in your correspondence . . . will be deemed to be a breach of those guarantees." *Id.* at 26. Plaintiff thereafter filed this lawsuit, seeking a declaration "that the Area Agreements between Domino's Pizza and Mr. Deak have expired and the provisions contained therein no longer bind the parties." Document No. 1, p. 11.

In a counterclaim for declaratory relief, Defendant contends that "a separate agreement was undertaken by [Plaintiff's] predecessor-in-interest which provided that [Deak] would have the right to the renewal of his Area Agreements upon the same or substantially similar terms for as long as he was engaged in the operation of Domino's Pizza stores." Document No. 5, ¶¶ 14-22. Specifically, Defendant relies on the signed statement of Sue Pagniano ("Pagniano"), a high-level manager at Domino's, who acted in "accordance with instructions from R. Mueller, Vice-President of Domino's Pizza Inc., [and] personally offered [Defendant a] promotion to Area Supervisor." Document No. 5, Exh. 1, ¶ 3. Deak alleges that Plaintiff gave him a choice between becoming an Area Supervisor or assuming a more lucrative position as Store Manager of the most profitable Domino's franchise in the Columbus, Ohio area. According to Pagniano, it was company policy at that time—which is not specified—to encourage employees to accept Area Supervisor positions by guaranteeing them the right to become area franchisees. *Id.* at ¶ 5. According to Pagniano, "[i]t is my specific recollection there were no time limits placed on the length of the area contracts. It was understood that [Deak's] right to be an Area Franchisee is for the duration of his development and ownership of Domino's Pizza Stores. . . ." Document No. 5, Exh. 1, ¶ 6. Deak thus asserts that "he was a party to a separate contract" with Domino's, who is "estopped, based upon principles of promissory estoppel and equitable estoppel, from

4

refusing to renew his Area Agreements in the same form, or substantially the same form, as had existed in the past." Document No. 5, ¶¶ 50-51.

A substantial controversy exists, as the Parties' dispute is preventing the opening of Domino's stores in the relevant Pennsylvania and Maine areas. Domino's now asks the Court to dismiss Defendant's counterclaim, arguing that because the parol evidence rule bars the admission of Pagniano's statements, Defendant cannot state a claim on which relief could be granted. Document No. 6, ¶ 20.

## II. ANALYSIS

### A. Applicable Standard

When analyzing a 12(b)(6) motion, the issue is not whether the plaintiffs will prevail at the end but only whether they should be entitled to offer evidence to support their claim. *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997); *Niami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). Accordingly, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943 (3d Cir. 1984). However, the court need not credit bald assertions or legal conclusions. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted). In addition to the allegations contained in the pleadings, the Court may also review "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994) (citation omitted). Furthermore, in deciding a rule 12(b)(6) motion, the Court may review "undisputably

5

authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Steinhardt Group v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997).

Dismissal is proper only if it is clear that relief would not be available under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1957). When a 12(b)(6) motion is granted, a district court should not dismiss the civil action but instead provide the claimant at least one opportunity to amend the defective complaint. However, when further amendment would be futile, an action or claim may be dismissed with prejudice and that plaintiff barred from raising it again. *Heller v. Fulare*, 371 F. Supp. 2d 743, 746 (W.D. Pa. 2005) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)).

## B. Defendant's Counterclaim for Declaratory Judgment

Plaintiff argues that any representation Pagniano made to Deak must have "occurred concurrent with her offer of the Area Supervisor position according to her own statements." Document No. 6., ¶ 17. Because their conversation took place when Deak was still a Domino's employee, it thus predates execution of the Area Agreements. Domino's therefore argues that the parol evidence rule prevents Deak from proving any facts to support his counterclaim. Document No. 7, pp. 4-7. Domino's cites the express integration clauses, which limit the terms of the Area Agreements to those contained in a narrow universe of documents. According to Plaintiff, the execution of the written agreements nullified any prior conversation Defendant had with a Domino's employee and now prevents any claim based on a separate agreement.

It is well-settled in Pennsylvania that

6

> [w]here the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract. When parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement.

*Blumenstock v. Gibson*, 811 A.2d 1029, 1035-36 (Pa. Super. Ct. 2002) (citations omitted). "Before applying the rule, courts must determine whether there is an integrated agreement and if so, whether it is completely or partially integrated. In addition, the court must determine whether the asserted prior agreements are within the scope of the integrated agreement." *Quorum Health Resources, Inc. v. Carbon-Schuylkill Cmty. Hosp., Inc.*, 49 F. Supp. 2d 430, 433 (E.D. Pa. 1999) (citations omitted).

Neither Party disputes that there was an agreement between them. Moreover, Deak concedes that the Area Agreements contain integration clauses, which state that "this Agreement . . . contains the entire agreement between the parties and there are no other oral or written understandings or agreements between the parties." Document No. 9 ¶ 15. These clauses contain unambiguous, true integration language and operate to make the Area Agreements completely integrated. *Quorum Health*, 49 F. Supp. 2d at 433 (finding complete integration in part because of a clause "that states the written agreement sets forth in full the terms of the parties undertaking . . . . the terms of the integration clause are unambiguous . . . . [and] the integration clause conveys no suggestion that anything beyond the four corners of the writing is necessary to ascertain the intent of the parties"); *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1053 (E.D. Pa. 1993) ("true integration language indicat[es] that the written . . . agreements set forth in full the terms of the parties' undertaking or that the written agreements constitute the entire agreement of the parties."). Furthermore, by clearly and explicitly creating set expiration dates, the Area

7

Agreements superceded any previous representation regarding renewal. *See Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 727 (8th Cir. 2001) (finding that the term of a contract is an express term); *Eclipse Med. v. Am. Hydro-Surgical Instruments*, 262 F. Supp. 2d 1334, 1360 (S.D. Fla. 1999) (same); *Davis v. Gulf Oil Corp.*, 572 F. Supp. 1393, 1400 (C.D. Cal. 1983) (same).

The Pagniano statements were clearly made prior to the execution of the Area Agreements; the potential to become a franchisee was the incentive for becoming an Area Supervisor instead of a Store Manager. Because the Court thus finds that the parol evidence rule applies, Deak can only preserve his counterclaim by identifying an exception to that rule through which the Court can consider the Pagniano statements, or by clearly describing what postcontractual representations, if any, support his claim that the Area Agreements could be renewed at his discretion.

### 1. Separate Agreement

Defendant first argues that "high ranking managerial officials at Domino's [represented] that [he] would be granted the right to have his Area Agreements renewed as long as he was interested in operating Domino's Pizza Stores." Document No. 8, pp. 6-7. Defendant uses the Pagniano statement to corroborate this factual history, according to which Domino's offered him a contract when its employees promised him the opportunity to become an area franchisee if he became an Area Supervisor. Defendant then accepted the offer, thus forming a contract, when he assumed the Supervisor position. His forbearance in not taking the more lucrative managerial position constituted the requisite consideration to form a contract. According to Defendant, this separate agreement makes the parol evidence rule inapplicable to the subsequent Pennsylvania and Maine agreements. Document No. 8, pp. 9-10.

In support of this argument, Deak relies on *Cohn v. McGurk*, 479 A.2d 578 (Pa. Super. Ct. 1984), for the proposition that "[w]here a separate agreement is present, the parol evidence rule is inapplicable." Document No. 8, p. 10. Such a broad reading of *Cohn*, however, manages to eradicate the entire parol evidence rule. Instead, that case merely reflects the principle that the rule

> has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by accident or mistake.

*Cohn*, 479 A.2d at 583 (quoting *Dunn v. Orloff*, 218 A.2d 314, 316 (1966).[2] In contrast with Defendant's position, Pennsylvania courts have specifically foreclosed the idea that parol evidence of separate agreements can be introduced solely to vary the terms of an integrated contract. *Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.*, 622 A.2d 367, 373-74 (Pa. Super. Ct. 1993). In *Iron Worker's*, the court refused to admit "evidence of a separate agreement for the sole purpose of varying the terms" of the contract in question. *Id.* Because the separate agreement was not "a true separate contract relat[ing] to a different subject matter," evidence of it was barred. *Id. See also Resolution Trust Corp. v. Urban Redevelopment Auth.*, 638 A.2d 972, 975 (Pa. 1994); *Lenzi v. Hahnemann Univ.*, 664 A.2d 1375, 1379 (Pa. Super. 1995); *1726 Cherry St. P'ship v. Bell Atl. Props.*, 653 A.2d 663, 670 (Pa. Super. Ct. 1995). Deak's claim seeks to vary the express terms of the Area Agreements with reference to an alleged contract that is clearly superceded by subsequent integration clauses. Because Deak does not argue that a separate agreement concerning a different matter explains some nonperformance, *Cohn* is inapposite,

---

[2] *Cohn* also indicates that the Court can recognize an exception to the parol evidence rule where a party executed an integrated agreement under duress. *Cohn*, 479 A.2d at 583. Deak makes no such claim, however.

9

and, even assuming there was a separate agreement, Defendant cannot avoid the parol evidence rule.

### 2. Admissions

Deak also cites *Cohn* for his second argument: "the statements cited by Defendant Deak could be viewed as admissions by the plaintiff, through its high level employees, concerning the fact that other terms were involved which guaranteed defendant's right to have his Area Agreements renewed." Document No. 8, p. 12. This argument is similarly unavailing, because Pennsylvania law places on Deak the burden of providing "clear, precise and convincing evidence" to show that Domino's has admitted the Area Agreements do not contain the Parties' intended agreement. *Dunn*, 218 A.2d at 316. *See also PPG Indus. v. Zurawin*, 52 Fed. Appx. 570, 573 (3d Cir. 2002) (nonprecedential opinion) (reciting the clear, precise, and convincing standard); *Giant Food Stores, Inc. v. Marketplace Commc'ns Corp.*, 717 F. Supp. 1071, 1074-75 (M.D. Pa. 1989) (same). Given this demanding standard, Deak's contention that "the statements cited by Defendant Deak could be viewed as admissions by the plaintiff" has obvious shortcomings. Opposing a motion to dismiss, Deak need not present actual evidence of an admission, but must at least allege specific facts that, if proven, would satisfy the burden articulated in *Dunn*. Defendant's reliance on mere possibilities does not help preserve his counterclaim.

### 3. Estoppel, Fraud & Unconscionability

Defendant lastly argues that any of three parol evidence exceptions could help sustain his counterclaim, either because Domino's is estopped from denying previously-expressed terms on which Defendant detrimentally relied; because Domino's committed fraud and violated its duty of good-faith when it refused to honor those terms; or because the Area Agreements were unconscionable. Document No. 8, pp. 12-15.

10

Domino's is not estopped from enforcing the terms of the Area Agreements. Deak correctly notes that "where a party acts or fails to act to his detriment in a reasonable reliance [*sic*] upon the promise of another, the promisor may be estopped from repudiating the promise even in the absence of consideration." Document No. 8, p. 12. The issue, however, is simply whether Defendant can introduce parol evidence to support his claim. But Deak again attempts to circumvent the parol evidence rule by destroying it. If courts permitted promissory estoppel claims based on representations made during the negotiations for integrated contracts, then there would be little point in enforcing a rule that "protects a completely integrated written contract from being varied or contradicted by extraneous evidence." *Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.*, 85 F. Supp. 2d 519, 530 (W.D. Pa. 2000) (citation omitted). As the Seventh Circuit has concluded, "[a] promisee cannot be permitted to use [promissory estoppel] to do an end run around . . . the parol evidence rule." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) (Posner, J.). There is thus an elegant simplicity in the parol evidence rule preventing Deak from establishing the first element of an estoppel claim: "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee." *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003). *See also Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 727 (8th Cir. 2001) (dismissing a promissory estoppel claim where the alleged promises were barred as parol evidence); *O'Connor v. Certainteed Corp.*, No. 87-3866, 1990 U.S. Dist. LEXIS 17385 **14-16 (E.D. Pa. Dec. 17, 1990) (noting that summary judgment against an estoppel claim would be proper where parol evidence of the promise could not be entered).

Furthermore, the parol evidence rule precludes evidence of fraudulent inducement. According

11

to the Pennsylvania Supreme Court, "where prior fraudulent oral representations are alleged regarding a subject that was specifically dealt with in the written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract." *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995). *See also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 n.26 (Pa. 2004) (reaffirming *HCB*); *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) ("[A] party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations."); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) ("The Supreme Court of Pennsylvania found that the parol evidence rule barred consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract."). Additionally, a fraudulent execution claim requires that the defrauded party be mistaken about the terms included in the written agreement. *Dayhoff Inc.*, 86 F.3d at 1300. Where the party has had sufficient opportunity to review the agreement prior to execution, the ability to subsequently claim fraudulent execution is all but eliminated. *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1108 (3d Cir. 1996). Even if Pagniano represented to Deak terms different from those in the Area Agreements, that does not mean such terms were fraudulently omitted from the Area Agreements, nor has Deak alleged fraud in the execution. Accordingly, he cannot qualify for that exception to the parol evidence rule.

Deak's last hopes thus depend on the duty of good faith that Pennsylvania law imposes on contracting parties and the doctrine of unconscionability. Document No. 8, pp. 13-15. Besides a

recitation of the duty, however, Plaintiff offers no further argument concerning Plaintiff's alleged bad-faith behavior; Deak sets forth no factual allegations to support his conclusory claim. Additionally, Deak points to nothing indicating "that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). Given these standards, the Court is also unable to discern anything in the record that could help Defendant establish a claim for relief.

## III. CONCLUSION

The Court having determined that the parol evidence rule prevents Defendant from introducing evidence of representations made prior to the execution of the Area Agreements, Deak's ability to state a claim for which the Court could grant relief depends on establishing an exception to that rule or citing some postcontractual amendment to those Agreements. On the basis of the pleadings and undisputed evidence on the record, however, the Court concludes that Defendant has not done so. The Pagniano statements were clearly made prior to execution of the Area Agreements; no exception to the parol evidence rule allows them to vary the terms of the integrated contracts; and Defendant has not cited evidence of postcontractual amendment to support his counterclaim. Because Deak's counterclaim is handicapped in part by a deficiency of factual allegations, however, Defendant will be given the opportunity to amend the claim. Moreover, though the Court has found that Defendant's pleadings do not support his claim for declaratory relief, the Court reserves judgment on the merits of any defense Deak might assert against Plaintiff's claims.

An appropriate Order follows.

AND NOW, this 23rd day of March, 2007, upon consideration of Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(6) (Document No. 6), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. Accordingly, Defendant's Counterclaim for declaratory relief is **DISMISSED**. Defendant has until **Friday, April 13, 2007**, to file an amended counterclaim.

**BY THE COURT:**

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**