**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DOMINO'S PIZZA LLC,           )
                              )
            Plaintiff         )
      v.                      )     CIVIL NO. 05-456
                              )
ROBERT J. DEAK,               )     JUDGE KIM R. GIBSON
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Presently before the Court is Plaintiff Domino's Pizza's Motion for Judgment on the

Pleadings (Doc. No. 24) pursuant to Federal Rule of Civil Procedure 12(c), together with the briefs

submitted by the parties in support and in opposition.  Upon full consideration of the arguments

presented, and for the following reasons, the Court hereby GRANTS Plaintiff's motion.

### II. Background

#### A. The Parties

Domino's Pizza LLC ("Domino's") is a Michigan limited liability company[1] with its

principal place of business in Ann Arbor, Michigan.  Domino's is one of the largest pizza chains

in the world, providing a uniform business format for numerous delivery and take-out pizza

restaurants.

Mr. Deak is a resident of the Commonwealth of Pennsylvania.  Mr. Deak and Domino's

engaged in a multi-decade business relationship, which included, at times, an employer-employee

---

[1]Domino's Pizza, LLC is the successor entity to Domino's Pizza, Inc. *See* Memorandum Opinion & Order, *Domino's Pizza, LLC v. Deak*, No. 3:05-cv-456 (W.D. Pa. March 23, 2007) (Doc. No. 17) (explaining that "[a]s of January 3, 2000, all rights, liabilities and property of Domino's Pizza Inc. were assigned to [Domino's Pizza LLC], a Michigan-based limited liability company.").

relationship and a franchisor-franchisee relationship.

### B. Factual History

The factual history of this matter has been adequately set forth in previous Court opinions,

and consequently this factual record is limited to that which is necessary for resolution of the at-

issue motion.

In 1980, Mr. Deak was granted the exclusive right to develop Domino's stores in an area,

pursuant to a document labeled "Pennsylvania Area Agreement." Doc. No. 1, Ex. A.

Among other things, the Pennsylvania Area Agreement provides:

> 2. Term of Agreement
> Unless sooner terminated as provided in Paragraph 9, the initial
> term of this Agreement shall be from the date hereof until the last
> day of the first Agreement Year and thereafter, this Agreement shall
> be automatically renewed for successive terms of one Agreement
> Year until the last day of the tenth (10th) Agreement Year, unless
> Area Franchisee shall, at its sole option, elect not to renew and shall
> give written notice to DOMINO'S of such election at least on
> hundred and twenty (120) days prior to the end of any Agreement
> Year.

Doc. No. 1, ex. A, p. 11.

The Pennsylvania Area Agreement also provides:

> The preamble recitals and Exhibits hereto are part of the
> Agreement, which constitutes the entire agreement of the parties
> and there are no other oral or written understandings or agreements
> between DOMINO'S and AREA FRANCHISEE relating to the
> subject matter of this Agreement except as otherwise contemplated
> by this Agreement.
> *Id.*

In 1990, the parties entered into an "Addendum to Area Agreement dated May 23, 1990";

this agreement provided in relevant part:

2

> 1. **Term of Area Franchise.** The Term of the Area
> Agreement as set forth in Paragraph 2 ("TERM OF ARE
> AGREEMENT") thereof shall be extended for an additional ten
> (10) year period following the expiration date of the Area
> Agreement. For purposes of clarification, the parties agree that the
> expiration date of the Area Agreement as executed by this
> Addendum shall be July 31, 2000."
> Doc. No. 1, Ex. B.

In 2001, the parties entered into an "Addendum to Area Agreement dated February 12,

2001"; this agreement provided in relevant part:

> 3.) The Term of the Area Agreement shall be extended for
> an additional five (5) year term. For purposes of clarification, the
> parties agree that this additional five (5) year term commenced
> August 1, 2000 and expires July 31, 2005.

Doc. No. 1, Ex. C.

The parties also entered into a similar contract that provided for franchise rights in Maine.

On November 16, 1999, Domino's Pizza reminded Mr. Deak that the Pennsylvania Area

Agreement would expire in December July 31, 2000. In response to the first reminder, Mr. Deak

phoned Domino's and informed it of his position that he was entitled to renew his exclusive rights.

On subsequent dates, Domino's offered similar reminders regarding the Maine Area Agreement.

Furthermore, in 2005, Domino's advised Mr. Deak that the area agreements would not be

renewed in substantially the same form. In response, Mr. Deak's attorney wrote to Domino's

"urging" it "not to accept applications to build stores in any location covered by his Area

Agreements" and that doing so "will be deemed to be a breach of [the] guarantees [contained in

the Deak-Domino's contracts]." Doc. No. 1, p. 27.

As detailed more fully *infra*, Mr. Deak believes that representations were made to him

regarding his ability to renew the contracts on the same terms. Ms. Pagniano's "affidavit" states:

3

"It is my specific recollection that there were no time limits placed on the length of the area contracts. It was understood that [Mr. Deak's] right to be an Area Franchisee is for the duration of his development and ownership of Domino's Pizza Stores . . . ." Doc. No. 5, Ex. 1, ¶ 6.

## C. Procedural History

Because Domino's felt concerned regarding the chasm between its interpretation of contract and Mr. Deak's, and such a dispute's potential impact upon franchise development, Domino's filed this action on December 19, 2005, requesting a declaratory judgment that the franchise agreements with Mr. Deak expired by their expressly stated terms. Doc. No. 1. Mr. Deak answered the Complaint on March 3, 2006, asserting defenses and raising a counterclaim seeking declaratory judgment that Domino's is estopped from refusing Mr. Deak's request to renew the relevant agreements. Doc. No. 5. On March 23, 2006, Domino's filed a Motion to Dismiss Mr. Deak's counterclaim (Doc. No. 6); this motion was granted by the Court on April 23, 2007. Doc. No. 17. On April 13, 2007, Mr. Deak filed an amended counterclaim; which was also dismissed by this Court in a March 20, 2008 Order. Doc. No. 28.

On November 25, 2008, Domino's filed a Motion for Judgment on the Pleadings. Doc. No. 151. In essence, Domino's argues that based solely upon the pleadings, it is entitled to judgment as a matter of law as to its claim for the Court's declaration "that the Area Agreements between Domino's and Mr. Deak have expired and the provisions contained therein no longer bind the parties." Doc. No. 1, p. 11. This motion, along with its supporting brief, and Mr. Deak's responses, are now before the Court for consideration.

## III. Statement of Jurisdiction

The Court's jurisdiction under this Declaratory Judgment Acts action, 28 U.S.C. § 2201,

4

is pursuant to 28 U.S.C. § 1332.[2] The Declaratory Judgment Act applies only in "a case of actual controversy." *McCahill v. Borough of Fox Chapel*, 438 F.2d 213, 215 (3d Cir. 1971). For this Court to exercise jurisdiction over any dispute, the Constitution dictates that the matter must present an actual justiciable controversy. Justice Murphy aptly explained the factors a Court should consider as to whether an actual controversy exists in a Declaratory Judgments Act action:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 61 S. Ct. 510, 512, 312 U.S. 270, 273, 85 L. Ed. 826 (1941).

Because all of the acts alleged to define the rights of the parties have already occurred, this Court finds that this matter presents an actual controversy, as envisaged by Congress and explained by Justice Murphy. Furthermore, this Court elects to exercise its discretion to hear the dispute, as a judgment on this matter will "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Edwin Borchard, *Declaratory Judgments* 299 (2d ed.1941).

Additionally, venue is proper under 28 U.S.C. § 1391(b)(1).

---

[2]The Declaratory Judgment Act is a not an independent basis for subject matter jurisdiction in a United States District Court. See *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351-352 (3d Cir.1986).

## IV. Standard of Review

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Granting the motion is only appropriate where the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways,* Inc., 863 F.2d 289, 290 (3d Cir. 1988) (*citing Society Hill Civic Assoc. v. Harris,* 632 F.2d 1045, 1054 (3d Cir. 1980)). Generally, federal courts are reluctant to grant a Rule 12(c) motion for Judgment on the Pleadings, because it provides for summary disposition of a party's claim on the merits before discovery. *See Cario-Med. Assoc. v. Crozer-Chester Med. Ctr.,* 536 F. Supp. 1065, 1072 (E.D. Pa. 1982); *Southmark Prime Plus, L.P. v. Falcone,* 776 F. Supp. 888, 891 (D. Del. 1991).

A Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) is analyzed under the same standard as a 12(b)(6) motion in that the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Mele v. Fed. Reserve Bank,* 359 F.3d 251, 253 (3d Cir. 2004); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Cmty. Coll.,* 725 F.2d 943 (3d Cir. 1984). In addition to the pleadings, Courts may also consider any undisputably authentic documents attached as exhibits. *Steinhardt Group v. Citicorp,* 126 F.3d 144, 145 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1197 (3d Cir. 1993).

In this matter, Judgment on the Pleadings is appropriate because there are no disputed material facts relevant to the outcome. Furthermore, a proper and sound judgment on the merits

6

may be achieved by focusing solely upon the content of the parties' pleadings and exhibits.

## V. Discussion

### A. Parties' Arguments

Essentially, Mr. Deak argues that Domino's represented to him that he would be allowed to continue to renew his exclusive rights to the areas. However, Domino's responds that the terms of the referenced contracts specifically set a time frame, and include a valid merger clause. Consequently, Domino's argues that pursuant to the plain language of the operative contracts, Mr. Deak's exclusive franchise rights have expired.

In response, Mr. Deak retorts that his discussions with Domino's representatives regarding the a right to renewal constituted a "separate agreement . . . which provided that [Mr. Deak] would have the right to the renewal of his Area Agreements upon the same or substantially similar terms for as []long as he was engaged in the operation of Domino's stores." Doc. No. 5, ¶¶ 14-15; *see also id.* ¶ 31 (averring that Domino's "is bound by the terms of a separate agreement which provided that the defendant's Area Agreements would be renewed in substantially the same form and upon substantially the same terms as the Area Agreements which he had operated under since approximately 1980."). Mr. Deak disputes Domino's characterization of his argument as a "perpetual" right; he avers that "he was specifically advised that his Area Agreements would be renewed on substantially the same basis that had existed in the past for as long as he was engaged in the operation of Domino's Pizza stores." Doc. No. 5, ¶ 24. In particular, Mr. Deak avers that a former "high level" Domino's employee, Sue Pagniano, made such representations to Mr. Deak. Mr. Deak also raises numerous other arguments, including but not limited to labeling Domino's conduct as "civil fraud and misrepresentation," that the relevant agreements were adhesive, and

7

that granting relief to Domino's would be "unconscionable and . . . result in a manifest injustice." Doc. No. 5, ¶¶ 42-44. As support for these averments, Mr. Deak offers an unsworn affidavit signed by Sue Pagniano. Doc. No. 5, ex. 1

## B. Applicable Law

For the first time in this proceeding, despite the existence and adjudication of two previous motions to dismiss, Mr. Deak now claims that the at-issue contracts are not governed by Pennsylvania law, pursuant to supposed choice of law provisions within those contracts. However, this is the first that the Court has heard of any such provisions, and no argument whatsoever has been heard as to the validity or enforceability of those provisions. Consequently, the Court finds that for purposes of internal consistency within the adjudication of this matter, and also pursuant to the finding that Mr. Deak waived his ability to raise the effect of the supposed choice of law agreement, the Court will apply Pennsylvania law. The Court notes that ultimately, application of any of the proposed forum's laws would yield the same result; the Court reviewed parol evidence cases in Michigan, Pennsylvania, and New York. Any differences in the law therein are of insignificant and immaterial effect upon the adjudication of this case.

Therefore, because this action was brought in this Court, and because the parties have not heretofore alleged otherwise, the Court applies Pennsylvania choice of law rules and finds that Pennsylvania law is the appropriate substantive body of law for use in determining the rights and responsibilities of the parties, including Mr. Deak, a Pennsylvania resident. *See Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988) (explaining that in a diversity action, "the choice of law rules of the forum state [determine] which state law will be applied.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).

8

**C. Analysis: By the Plain and Clear Terms of the Contracts, Mr. Deak's Exclusive Contractual Rights Expired in 2005, and Evidence of Other "Separate Agreements" is Barred by the Parole Evidence Rule**

As viewed through the prism of the substantive law, the Court finds that no material facts are in dispute, and all relevant facts are located within the pleadings; therefore, the Court finds that judgment on the pleadings is appropriate in this matter. The Court notes that additional relevant analysis of this situation exists in its two previous opinions dismissing Mr. Deak's counterclaims; the Court restates certain matters only where essential to this instant analysis as it relates to Domino's Motion for Judgment on the Pleadings.

**1. As the Court Ruled Earlier in its Orders on Plaintiff's Motions to Dismiss Defendant's Counterclaims, the Parole Evidence Rule Excludes all Evidence of Domino's Statements Prior to or Contemporaneous With the Entering of the Area Agreements**

As this Court previously noted in its first dismissal of Defendant's counterclaim, Pennsylvania law holds as follows:

> Where the parties to an agreement adopt a writing as a final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract. When parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement.

*Blumenstock v. Gibson*, 811 A.2d 1029, 1035-36 (Pa. Super. Ct. 2002) (citations omitted).

The Supreme Court of Pennsylvania explained the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the

9

writing to be not only the best, but the only, evidence of their
agreement. All preliminary negotiations, conversations and verbal
agreements are merged in and superseded by the subsequent written
contract . . . and unless fraud, accident or mistake be averred, the
writing constitutes the agreement between the parties, and its terms
and agreements cannot be added to nor subtracted from by parol
evidence.

        Therefore, for the parol evidence rule to apply, there must
be a writing that represents the "entire contract between the parties"
. . . . An integration clause which states that a writing is meant to
represent the parties' entire agreement is . . . a clear sign that the
writing is meant to be just that and thereby expresses all of the
parties' negotiations, conversations, and agreements made prior to
its execution.

        Once a writing is determined to be the parties' entire
contract, the parol evidence rule applies and evidence of any
previous oral or written negotiations or agreements involving the
same subject matter as the contract is almost always inadmissible
to explain or vary the terms of the contract.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 245, 436-37 (Pa. 2004).

        For the parole evidence rule to be applicable, the Court must determine that the agreement

is integrated, and that the asserted separate agreements are within the scope of the integrated

agreement. *See Quorum Health Resources, Inc. v. Carbon-Schuylkill Cmty. Hosp., Inc.*, 49 F.

Supp. 2d 430 433 (E.D. Pa. 1999) (citations omitted).

        The at-issue Area Agreements contain a complete and clear merger agreement.

Furthermore, this Court previously held that these agreements were fully integrated. Mr. Deak

expressly acknowledges the existence of these clear time limits. Furthermore, Mr. Deak also fully

acknowledges signing the relevant agreements, and operating under their provisions for numerous

years. Consistent with this Court's prior opinions, the Court again finds that the Area Agreements

are fully integrated. Furthermore, the Area Agreements set out specific expiration dates, meaning

that the agreements address precisely the topical area that Mr. Deak alleges is covered by a separate

10

agreement. Therefore, the Court finds that pursuant to Pennsylvania law,[3] the separate agreements asserted by Mr. Deak are within the scope of the integrated agreement; consequently, any discussions whatsoever between Mr. Deak and Domino's representatives, including Ms. Pagniano, regarding the putative unending renewability of the contracts, is patently inadmissible pursuant to the parol evidence rule. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) ("A party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations."); In short, and as previously ruled by this Court,[4] the parol evidence rule bars precisely the type of evidence that Mr. Deak attempts to admit, which is evidence that alleges that Domino's made representations that vary the clear and established terms of the contracts.

### 2.  Proposed Evidence Regarding Separate Agreement is Not Admissible Under Any Exception to the Parole Evidence

In an attempt to rescue his tenuous legal position, Mr. Deak argues at length that an exception to the parole evidence rule applies. The parol evidence rule does not bar the introduction of "clear, precise and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the written agreement by mistake or accident." *Giant Food Stores v. Marketplace Comms. Corp.*, 717

---

[3]And, alternatively, pursuant to Michigan and Maine law.

[4]In its March 20, 2008 Order, this Court correctly explained that allowing admission of the unsworn statement of Ms. Pagniano "would make the circumvention of the parol evidence rule so simple as to render the rule virtually meaningless. If its operation could be obviated by nothing more than an allegation supported only by an unsworn writing executed more than twenty years after the alleged agreement was made by a former employee of the party seeking to enforce the written contract according to its tenor, the parol evidence rule would become a subject of interest only to legal historians." *Domino's Pizza, LLC v. Deak*, No. 3:05-cv-456 (W.D. Pa. Mar. 20, 2009) (Doc. No. 28).

11

F. Supp. 1071, 1075 (M.D. Pa. 1989). Here, no party alleges that what the parties intended was omitted from the written agreement by mistake or accident. Furthermore, upon consideration of all conceivable exceptions, the Court finds that as a matter of law, as discussed herein, no such exceptions apply to the circumstances of the instant case.

### a. Separate Agreement, as Alleged by Mr. Deak, is Not Admissible

Mr. Deak argues that a separate agreement regarding the renewability of the exclusivity arrangement was an essential aspect of his willingness to enter into the Area Agreements, as he has other more lucrative short-term opportunities available. Defendant's factual argument appears to completely misunderstand the law. A separate agreement, when such agreement constitutes clear evidence that a contractual term is misunderstood or was never intended, is only admissible where the meaning of a term in the written, integrated agreement is unclear. *See Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.*, 622 A.2d 367, 373-74 (Pa. Super. Ct. 1993).

In an unpublished but nonetheless instructive opinion, the Third Circuit criticized a party's argument that a district court erred in "failing to accept as true their allegations that the oral promises were wholly independent of the written Agreement", and explained as follows:

> This argument [that the district court should have accepted
> as true the allegation of independent agreements] is flawed. The
> district court was not required to accept this 'fact' as true under
> Fed. R. Civ. P. 12(c) because it is a legal determination to be made
> by the court. Moreover, as the district court noted, "the subject
> matter of the alleged oral representations is the exact subject matter
> of the Agreement itself . . . ." . . . The written Agreement at issue
> here includes an integration clause. Moreover, the oral promises
> and the Agreement "relate to the same subject matter."
> Consequently, the parol evidence rule applies, and appellants are
> precluded from introducing evidence of prior oral promises that
> vary the terms of the fully integrated, written merger agreement.

*Sullivan v. Sovereign Bancorp., Inc.*, 33 Fed Appx. 640 (3d Cir. Apr. 11, 2002).

Here, Mr. Deak alleges that a separate and independent agreement materially altered the plain and simple terms of expiration of the integrated Area Agreements. He alleges that a separate agreement governed the precise issue referenced and defined in the contract. In other words, he asks the Court to throw out a viable and extensive contract, which he himself signed, because that contract was less accurate than his off-the-record discussions with a Domino's employee.

Upon full consideration of this argument, the Court finds that for purposes of the parol evidenc rule, the at-issue contractual language, which specifically sets an expiration date, exists within the same subject matter circumference as discussions relating to the renewability of the terms of the agreement. In this matter, each Area Agreement contained explicit and unmistakable language specifying a precise period at which the contract would expire. In other words, just as in *Sullivan*, the subject matter of the alleged oral representations by Domino's is the exact same subject matter governed by the express contractual language.

Mr. Deak argues that the parties intended to allow him to renew the contracts at will for essentially as long as he wanted. The Court is not disputing or even considering whether such representations were made; rather, the Court finds that the existence or non-existence of any such representations is simply not relevant to the matter before this Court for adjudication. If the parties indeed intended to grant Mr. Deak this boon, and there was a meeting of the minds between Domino's and Mr. Deak regarding infinite renewability of the Area Agreements, such should have been included in the written, signed, and executed Area Agreements. Since it was not, and this Court currently lacks the omniscience that would enable complete understanding of all representations and all intentions upon the date of contract formation, such as would enable fair

13

adjudication, the Court must instead rely upon what is available: the signed, executed, integrated contracts. If Mr. Deak indeed gave up valuable alternative opportunities in exchange for guaranteed renewability within the Area Agreements, he was required by the law of Pennsylvania, and indeed sound contract law in any jurisdiction, to include such terms in the memorialized contract. Since he did not, he is prevented from raising such extra-contractual allegations, and any such evidence as to the renewability of the contracts is inadmissible and non-relevant. Admittedly, the parol evidence may at times seem to work injustice; however, without such a rule, the adjudication of contract disputes would inevitably devolve into a war of allegations. Rather than permitting such extracontractual allegations, courts instead elect to forbid such evidence; this Court remains confident that such a course, honoring the parol evidence rule, better serves the overall interests of society.

### b. Admissions Exception is Not Applicable

In previous opinions, this Court ruled that Mr. Deak's attempt to introduce evidence pursuant to the "admissions" exception is not correct. While Mr. Deak acknowledges this ruling, he nonetheless re-argues his position "in order to continue to preserve this point." Doc. No. 39, p. 8. Consequently, the Court, in an effort to fully address all of Mr. Deak's arguments, will again discuss why the admission exception is not applicable.

Pennsylvania law places a high burden upon Mr. Deak to provide "clear, precise, and convincing evidence" that shows that Domino's expressly acknowledged that the Area Agreements did not contain the intended agreement. *Dunn v. Orloff*, 218 A.2d 314, 316 (Pa. 1966); *see also Gitt v. Myers*, 417 A.2d 664, 667 (Pa. Super. 1980) ("[W]here there is no evidence of an admission or acknowledgment by the one enforcing the written contract that the oral agreement asserted by

14

the defense had in fact been made or that the promissory note or other instrument in suit as written did not express the entire agreement of the parties at the time as to manner and time of payment parol evidence is not admissible to vary, modify or defeat the written agreement.") (citing *Scott v. Bryn Mawr Arms*, 312 A.2d 592 (Pa. 1973). Therefore, Mr. Deak must allege specific facts, which, if proven, would satisfy his burden of providing clear, precise and convincing evidence that Domino's admitted that the Area Agreements did not contain the intended agreement and that Mr. Deak entered into the Agreement containing materially different terms only by mistake.

Upon another re-assessment of this matter, the Court again finds that the admission exception is not applicable. Mr. Deak makes various allegations that individuals acting as Domino's agents represented to him that he would enjoy the right to renew the area agreements; however, such representations, regardless of their specific factual parameters, do not, as a matter of law, contain the necessary precise and convincing evidence that the Area Agreement was not totally integrated and did not properly record the legally enforceable promises between the parties. Mr. Deak's brief, while containing additional information not included in the pleadings, avers that Domino's agents informed him that the Area Agreements were not necessarily controlling of his relationship with Domino's. These allegations, whether true or not, defy all business and legal logic, and are of no import in the adjudication of this contractual dispute. Furthermore, the only actual averments before the Court are those in the pleadings, and in Ms. Pagniano's unsworn and unverified document. Such averments simply cannot constitute the requisite penetrating admissions.

Rather, the pleadings unchallengeably show that Mr. Deak and Domino's entered into a valid and fully integrated contract, and proceeded to perform the obligations therein in a manner

15

consistent with that contract. The putative admissions, by Domino's, regarding the supposed non-binding nature of those contractual terms are not of sufficient moment, in terms of their potential evidentiary value, internal business logic, and relevance, to overcome the applicability of the parol evidence rule via the admission exception.

### c. Mr. Deak Does Not Allege Sufficient Facts That, Even if Proven, Make a Sufficient Showing of Estoppel, Fraud, or Unconscionability

Mr. Deak also argues numerous additional theories, as if hoping to employ a shotgun approach to potential legal success; such theories include: estoppel, violations of the covenant of good faith and fair dealing, and unconscionability. Because none of these theories exhibit any merit on the facts of the instant case, Mr. Deak's arguments are summarily dismissed.

As to Mr. Deak's estoppel arguments, an earlier Court opinion in this matter characterized Mr. Deak's arguments as "attempts to circumvent the parol evidence rule by destroying it." Doc. No. 17, p. 11. In short, Mr. Deak misunderstands the scope and purpose of the parol evidence rule. In short, the parol evidence rule is substantially at odds with a broad estoppel argument, and this Court elects to pay proper heed to the purposes and policies of the parol evidence rule. As Judge Posner explained, a "promisee cannot be permitted to use [estoppel] to do an end run around . . . the parol evidence rule." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999).

Second, as to fraud, the Court finds that Mr. Deak does not make sufficient allegations such that fraud represents a tangible issue for adjudication. Furthermore, even allegations of fraud may not necessarily evade the grasp of the parol evidence rule. The Pennsylvania Supreme Court explained: "where prior fraudulent oral representations are alleged regarding a subject that was

16

specifically dealt with in the written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract." *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995). Here, Mr. Deak alleges the existence of oral representations regarding renewability, but does not "aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract." *Id.* Consequently, such allegations cannot present a viable defense against Domino's motion for judgment.

Mr. Deak also mentions the contractual doctrine of unconscionability. However, Mr. Deak fails to make factual allegations that would provide any support whatsoever for a finding of unconscionability. Mr. Deak does not allege that the contractual terms were unreasonably favorable to Domino's, or that he was somehow deprived of a meaningful choice in accepting and signing the Area Agreements. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003).

Consequently, once again, Mr. Deak's allegations are wholly inadmissible pursuant to proper application of the parol evidence rule. Because such extracontractual representations are inadmissible, the Court need only adjudicate the matter before it: the contracts presented to the Court as being entered into by both parties. Upon consideration of these contracts, the Court finds that indeed, as argued by Domino's, the legal effect of these contracts is now extinguished, by simple application of the contract's own unambiguous language setting an end date to its effect. Therefore, Domino's is entitled to judgment as a matter of law: the Court hereby declares that the Area Agreements between Domino's Pizza and Mr. Deak have expired and the provisions

17

contained therein no longer bind the parties.

## VI. Conclusion

In conclusion, the Court holds that as a matter of law, the parol evidence rule prevents Mr. Deak from introducing essentially all of the factual allegations that would support his position. Furthermore, upon a plain and simple reading of a relatively pedestrian contract, the terms clearly state that the relationship expires on a date certain. Consequently, the Court hereby finds that the contract has expired, and its terms no longer govern the relationships of the parties. Domino's should feel free to enter into franchise relationships with alternative parties without undue fear of burdensome litigation.

Mr. Deak's position does not appear to comprehend the legal practice and doctrine that where parties' economic relationships are governed by the terms of a valid contract, terms contained in that contract may not be contradicted by previous external representations, absent limited exceptions inapplicable to the instant matter. It remains unexplained as to why Mr. Deak did not seek specific contractual terms that would reflect the supposed assurances from Domino's that he would be entitled to ongoing and apparently unlimited renewals of the contract at the same terms.

Consequently, the Court finds that it is wholly proper under the law to grant Domino's judgment as a matter of law based solely upon the pleadings. An appropriate Order follows.

18

## ORDER

**AND NOW**, this 4th day of September, 2009, in consideration of Plaintiff Domino's Pizza, LLC's "Motion for Judgment on the Pleadings" (Doc. No. 37), and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Motion is GRANTED. The Court hereby declares, pursuant to its authority under the Declaratory Judgment Act, that the at-issue contracts between the parties have expired, and their terms no longer govern the relationships of the parties. **IT IS FURTHER ORDERED THAT** the Clerk of Court is directed to enter judgment in favor of Plaintiff, and to mark this matter closed.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**